IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICOLE SAAH,                              *

    Plaintiff,                        *

        v.                         *                 Civil Action No. RDB-15-2425

CARROLL L. THUMEL, D.V.M. AND            *
MARY BETH SOVERNS, D.V.M., P.A.
d/b/a Countryside Veterinary Clinic,     *

    Defendant.                        *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

Plaintiff Nicole Saah ("Plaintiff" or "Saah") has brought this action against Defendants Carroll L. Thumel, D.V.M. and Mary Beth Soverns, D.V.M., P.A. (d/b/a Countryside Veterinary Clinic) ("Defendant" or "Thumel/Soverns, P.A.") and Countryside Veterinary Clinic, Inc.[1], alleging pregnancy discrimination, disability discrimination, and retaliation for protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), the Maryland Fair Employment Practices Act, MD. CODE

---

[1] Although Plaintiff's Complaint names "Countryside Veterinary Clinic, Inc." as a separate Defendant, it is not an independent corporate entity. Defendant Thumel/Soverns P.A. has indicated that it registered the *trade name* "Countryside Veterinary Clinic, Inc." in August of 2007 with the Maryland Department of Assessments and Taxation ("SDAT"), but that the registration for this trade name expired in October of 2011. Mem. Supp. Mot., p. 35, ECF No. 18-1. Thumel/Soverns, P.A. now does business under the registered trade name "Countryside Veterinary Clinic." *Id.* The expired *trade name* "Countryside Veterinary Clinic, Inc." is not an entity capable of being sued, and Plaintiff does not contest that this non-entity should now be dismissed from this case. Pl. Opp'n, p. 50, ECF No. 21. For these reasons, all claims against Countryside Veterinary Clinic, Inc. are DISMISSED. Thumel/Soverns, P.A. is now the sole Defendant in this lawsuit, and this case is re-captioned "NICOLE SAAH v. CARROLL L. THUMEL, D.V.M. AND MARY BETH SOVERNS, D.V.M., P.A. d/b/a Countryside Veterinary Clinic."

ANN., STATE GOV'T §§ 20-601, *et seq.* ("MFEPA"), and the Howard County Human Rights

Act, Howard County Code §§ 12.200, *et seq.*  *See* Compl., ¶¶ 105-120, ECF No. 1.

Currently pending before this Court is Defendant Thumel/Soverns, P.A.'s Motion

for Summary Judgment (ECF No. 18).[2]  The parties' submissions have been reviewed, and

no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2016).  For the reasons stated herein,

Defendant Thumel/Soverns, P.A.'s Motion for Summary Judgment (ECF No. 18) is

GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiff has failed to present

any evidence that she suffered a "disability."  Accordingly, Defendant's Motion is granted

with respect to all claims [both discrimination and retaliation] under the Americans with

Disabilities Act and the Maryland Fair Employment Practices Act, which prohibit

discrimination on the basis of disability, but not pregnancy alone.  Additionally, Defendant's

Motion is granted with respect to Plaintiff's disability discrimination claim under the Howard

County Human Rights Act, which prohibits both disability discrimination and pregnancy

discrimination.  Judgment shall be entered for Defendant Thumel/Soverns, P.A. as to those

---

[2] Also pending before this Court is Defendant's Objection to Consideration of Paper Exceeding Page Limitations, and Motion to Strike Supporting Declaration and Exhibits from Consideration (ECF No. 23), in which Defendant Thumel/Soverns, P.A. requests that this Court not consider the last 15 pages of Plaintiff's 50-page brief in opposition to the pending Motion for Summary Judgment (ECF No. 21) because that brief exceeded this Court's recently enacted 35-page filing limit on motions memoranda.  *See* Local Rule 105.3 (D. Md. 2016).  Additionally, Defendant objects that, although Plaintiff's opposition brief was timely filed, the exhibits to that brief were filed in the early morning of the next day following the filing deadline.  *See* Obj., ¶ 2, ECF No. 23.  As discussed *infra*, this case was filed in August of 2014.  The 2016 amendments to the Local Rules of this Court, which include the new 35-page filing limit, only apply to cases already pending as of July 1, 2016 "to the extent practicable" and "unless otherwise ordered by the presiding judge."  *See* Standing Order 2016-02, ¶ 3 (D. Md. 2016).  Plaintiff's counsel have indicated that they began drafting their opposition brief prior to the new rule taking effect and that their exhibits were filed late due to technical difficulties with this Court's electronic case filing system (CM/ECF).  Defendant has not demonstrated that it was significantly prejudiced by the late filing.  For these reasons, Defendant's Objection to Consideration of Paper Exceeding Page Limitations, and Motion to Strike Supporting Declaration and Exhibits from Consideration (ECF No. 23) is DENIED.  Accordingly, in ruling on the pending Motion for Summary Judgment, this Court will consider Plaintiff's timely-filed opposition brief (ECF No. 21) in its entirety and the referenced exhibits.

claims.[3]   However, Defendant's Motion is denied as to both Plaintiff's pregnancy discrimination and retaliation claims, brought under Title VII of the Civil Rights Act of 1964 and the Howard County Human Rights Act.   A genuine issue of material fact remains as to liability on those claims.   Finally, Defendant's Motion is granted with respect to Plaintiff's request for punitive damages.   Judgment shall be entered for Defendant as to Plaintiff's request for punitive damages, and Punitive damages will not be awarded in this case.

## BACKGROUND

I.   Plaintiff Saah's Employment with Defendant Thumel/Soverns, P.A.

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party.   *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).   In October of 2007, Plaintiff Nicole Saah ("Plaintiff" or "Saah") was hired as a veterinary assistant by Defendant Carroll L. Thumel, D.V.M. and Mary Beth Soverns, D.V.M., P.A. (d/b/a Countryside Veterinary Clinic) ("Defendant" or "Thumel/Soverns, P.A."), a veterinary clinic in Howard County, Maryland.   *See* Compl., ¶¶ 7, 22, ECF No. 1. Doctor Carroll Thumel ("Dr. Thumel") and Doctor Mary Beth Soverns ("Dr. Soverns") are the co-owners of Thumel/Soverns, P.A.   Thumel Dep., p. 5, ECF No. 18-14.   As a veterinary assistant, Saah's duties included assisting veterinarians during animal examinations, assisting with x-rays, cleaning animal cages, walking and feeding animals, administering

---

[3] Plaintiff does not contest Defendant's arguments for summary judgment as to her disability discrimination claims. *See* Pl. Opp'n, p. 50, ECF No. 21.

medications, injections, and fluids to animals, and performing some lab work.  *See* Soverns

Dep., p. 303, ECF No. 18-15.

II.     Plaintiff Saah's Job Performance

Michelle Grap ("Grap") has been the Thumel/Soverns, P.A. practice manager and

Saah's supervisor since 2012.  Grap Dep., p. 10, ECF No. 18-13.  When Saah was a new

employee, she received training on all office policies, including policies related to employee

break time, work hours, clocking in and out of the employee tracking system, calling in sick,

performance reviews, grounds for dismissal, and the Hospital Manual.  *See* Saah Dep., p. 49,

ECF No. 18-12; Soverns Dep., p. 293-294, ECF No. 18-15.  Saah admits that she violated

these policies at various times during her employment with Thumel/Soverns, P.A, including

using her cell phone during work hours and eating in the office during work hours.  Saah

Dep., p. 70-72, ECF No. 18-12.  Grap contends that she spoke regularly to Saah about her

violations of the company's cellphone policy and made Dr. Soverns aware of these

discussions.  Grap Dep., p. 90-91, 325, ECF No. 18-13.  Additionally, on May 7, 2012, Dr.

Thumel had a one-on-one meeting with Saah to discuss her chronic lateness, and her

practice of repeatedly clocking in on the time clock in the morning and walking to a nearby

Dunkin Donuts store, then eating breakfast in the office instead of performing assigned

tasks.  Saah Dep. p. 77-78, ECF No. 18-12.  Saah was late to work on several occasions, and

has indicated that it was discussed with her in her 2010 annual review and in subsequent

annual reviews.  *Id.* at 86.

Despite these admitted policy violations, many of which occurred in Saah's first few

years of employment, Saah's written performance reviews from both 2012 and 2013 [the

4

years immediately prior to her termination, discussed *infra*] were overwhelmingly positive. Specifically, Doctors Thumel and Soverns rewarded Saah's performance in 2013 with a "96/100" points on the performance review scale and a $0.96 per hour raise.  2013 Review, ECF No. 22-5.  On her 2013 performance review, Saah received a 10/10 for "Attendance." *Id.*  The comments section for "Attendance" read "Perfect!"  *Id.*  Saah also received a 10/10 under categories labeled "Attitude, "Ability to do Job," "Helpful," "Represents Countryside Well at All Times," "Promotes our Products and/Services" "and "Attendance at Meetings." *Id.*  The 2013 review noted Saah's tardiness, but deducted only 3 points.  *Id.*  In contrast, Saah has indicated that the clinic temporarily reduced the wage rate of another employee in 2013 as a sanction for her chronic tardiness, effectively suspending a recently awarded raise. Saah Dep., p. 152-53, ECF No. 18-12.  There is no indication that Thumel/Soverns, P.A. ever took this measure against Saah.  Additionally, Defendant has provided no documentary evidence of inadequate job performance by Saah following the 2013 performance review.  In fact, Doctors Thumel and Soverns have admitted that Saah's performance was unchanged after her 2013 performance evaluation.  *See* Soverns Dep., p. 93, ECF No. 18-15; Thumel Dep., p. 261, ECF No. 18-14.

III.     Plaintiff Saah's Pregnancy

In May of 2013, Saah informed Thumel/Soverns, P.A. that she was pregnant.  Saah Dep., p. 157, ECF No. 18-12.  Saah spoke directly to Grap, who subsequently informed Dr. Soverns about a week later.  *Id.* at 157-58.  According to Saah, Grap was "surprised" by the news, and Dr. Soverns never congratulated her, but asked Saah how she was going to handle

working and being in school at the same time as having a baby.  *Id.* at 158; Statement of Nicole Saah, p. 12, ECF No. 20.

Dr. Soverns has indicated that Thumel/Soverns, P.A. has a long-standing policy and practice concerning pregnant employees.  *See* Soverns Dep., p. 308, ECF No. 18-15. Pursuant to that policy, pregnant employees are directed not to perform chemotherapy, take x-rays, empty litter boxes, or lift heavy objects, and are encouraged to ask for help whenever it is needed.  *Id.*  Additionally, Thumel/Soverns, P.A. has promulgated a nondiscrimination policy.  *See* Employee Handbook, ECF No. 22-25.

During the final three months of her employment, Saah asked co-workers for assistance in lifting animals, lifting heavy objects, and performing x-rays.  Saah Dep., p. 226, ECF No. 18-12.  Saah did not ask for any additional accommodations beyond those routine precautions.  *Id.* at 309.  Saah has indicated that no clinic employee ever denied her requests for help.  *Id.* at 226.  However, Saah has stated that from October of 2013 through December of 2013, the final months of Saah's pregnancy, Grap would roll her eyes when Saah asked for assistance, and would not jump up to help her.  *Id.* at 174.  Additionally, Brooke Schaper Floyd, a fellow clinic employee, recalls Grap saying that she thought Saah was "taking advantage of her pregnancy."  Floyd Dep., p. 110-111, ECF No. 22-11.

IV.   The Incident on December 9, 2013

On December 9, 2013, Saah was standing at a computer outside of a closed office door at the clinic when she overheard a conversation inside that office.  Saah Dep., p. 178-82, ECF No. 18-12.  Saah could hear people talking inside and couldn't understand much of what they said, but heard them mention the name of another employee, Jacklyn Sink.  *Id.*

6

Saah proceeded to walk down the hall to an employee break room where fellow employees Lauren Hess, Brooke Schaper Floyd, and Heidi Previll were eating lunch. *Id.* at 182-84. Saah claims that she stated to her fellow employees that she had overheard Grap, Dr. Soverns, and Dr. Thumel talking in the office, and had heard Jacklyn's name mentioned, but didn't know what it was about. *Id.* at 185-87. Of the employees present in the break room at that time, Previll and Hess recall Saah saying that Grap was "talking shit" about people. Previll Decl., ¶ 2, ECF No. 18-5; Hess Decl., ¶ 2, ECF No. 18-6. However, Floyd recalls Saah saying only that Jacklyn was in trouble and had done something wrong. Floyd Dep., p. 30-32, ECF No. 18-17. Later that day, Previll approached Grap, told her about Saah's statement, and indicated that it made her feel uncomfortable.

That evening, Grap called Saah on the telephone to discuss the incident. Saah Dep., p. 193-94, ECF No. 18-12. Grap asked Saah if she had told the employees in the break room that Grap was "talking shit." Grap Dep., p. 244, ECF No. 18-13. According to Grap, Saah responded, "Yeah, I said that." *Id.* at 249. However, Saah denies making this statement and also denies making the underlying "talking shit" comment. Saah Dep., p. 193-94, ECF No. 18-12. Instead, Saah claims that while on the phone with Grap, she confronted Grap about the way in which she had been treated in the final months of her pregnancy. Saah stated, "I feel like you've been treating me a little unfairly having to go and ask for help and you know, you sigh and roll your eyes and take forever to come help me, and that's a little frustrating to me. I don't understand why . . . you've been treating me like that[,]" to which Grap responded that Saah was "Lazy." Saah Dep., p. 194-95, ECF No. 18-12.

7

According to Saah, she then asked Grap, "Lazy why? Because I'm pregnant and I need help with things[?]" *Id.* Grap responded, "[m]aybe lazy is not the word I should use." *Id.*

V.    Plaintiff Saah's Termination

Following her conversation with Saah, Grap sent a series of text messages to Dr. Soverns, informing her that Saah had admitted to making the "talking shit" statement and had shown no remorse.[4] Grap also relayed to Soverns that Saah had complained of being "picked on" and objected that "she [couldn't] tell anyone anything." Text Messages, ECF No. 18-9. The following day, December 10, 2013, Grap met with Doctors Thumel and Soverns to discuss Saah. Grap Dep., p. 61, 223, ECF No. 18-13. Grap told the doctors what she had heard from Previll and that Saah had admitted to making the "talking shit" statement. *Id.* at 224. Grap told the doctors what happened in her conversation with Saah. *Id.* at 224; Soverns Dep., p. 29, ECF No. 18-15. That afternoon, Grap called Saah to inform her that she was terminated from her position. Saah Dep., p. 197-98, ECF No. 18-12.

Doctors Thumel and Soverns have indicated that clinic management had no plans to discipline, much less fire, Saah as of December 9, 2013. Thumel Dep., p. 6-7, ECF No. 18-14; Soverns Dep., p. 44, ECF No. 18-15. However, the doctors have also indicated that in their December 10, 2013 meeting they discussed Saah's prior violations of clinic policy, and concluded that Saah's eavesdropping outside of a closed office door, then telling co-workers that a manager was "talking shit," was the "last straw."[5] Soverns Dep., p. 19, ECF No. 18-

---

[4] As discussed *supra*, Saah contends that she did not admit to making this statement while on the phone with Grap and that Grap falsely told Soverns she had. Pl. Opp'n., p. 7, ECF No. 21.

[5] Saah was not provided this explanation for her termination on the phone call with Grap. As discussed *infra*, Saah has presented evidence that the clinic's explanation for her termination has shifted over time.

15; Thumel Dep., p. 29, 30-31, 35, 38-39, 109-110, 171-72, 180, ECF No. 18-14.   Dr. Thumel admits that Saah's comments would have violated no company policy if she had merely stated that she "heard Jacklyn's name" and "heard them talking in there," which is in fact what Saah claims to have said in the break room.   Thumel Dep., p. 93-95, ECF No. 18-14.   Additionally, Doctors Thumel and Soverns have both stated that they are unaware of a clinic policy prohibiting disparaging or disruptive comments.   *See* Thumel Dep., p. 99-100, ECF No.18-14; Soverns Dep., p. 274, ECF No. 18-15.

No one was immediately hired to replace Saah, and other employees filled in to take over her hours.   Unemployment Hrg. Record, p. 34, ECF No. 22-10.   None of the other assistants were pregnant during this time.   Thumel Dep., p. 295, ECF No. 18-14.   The only female hired as a veterinary assistant after Saah, Summer Scout Ford, was not pregnant at the time she was hired.   *Id.* at 296.

VI.   Subsequent Proceedings

Dr. Soverns met with Saah and Saah's mother on December 18, 2013.   Soverns Dep. p. 173, ECF No. 18-15.   When Soverns raised the issue of Saah's comment in the break room, Saah explained that she had not made the alleged "talking shit" comment and relayed to Soverns her concerns about Grap's attitude toward her in the final months of her pregnancy.   She also told Dr. Soverns that Grap had called her "lazy" over the phone when Saah complained to her about her treatment.   Saah Dep., p. 194, ECF No. 18-12.   In response, Dr. Soverns cited Saah's lateness and eating during work hours as additional grounds for her termination.   Saah responded that the lateness issue was not discussed in her

2013 performance review, that other employees were late, and that she ate at work because she needed to eat more during her pregnancy.  Roberta's Statement, p. 3, ECF No. 22-17.

Saah filed a formal charge with the Howard County Office of Human Rights ("HC-OHR") on April 9, 2014, alleging discrimination based on sex, pregnancy, disability, and retaliation.  Compl., ¶¶ 11-15, ECF No. 1.  That charge was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").  *Id.* at ¶ 15.  The HC-OHR conducted an investigation and ultimately concluded that there was "no reasonable cause" to believe that unlawful discrimination or retaliation had occurred.  *See* HC-OHR Decision and Order, March 27, 2014, p. 18.  The EEOC issued Saah a right to sue letter on May 15, 2015.  Compl., ¶ 18, ECF No. 1.  Saah proceeded to file the pending lawsuit on August 14, 2015, alleging pregnancy discrimination, disability discrimination, and retaliation for protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"), the Maryland Fair Employment Practices Act, MD. CODE ANN., STATE GOV'T §§ 20-601, et seq. ("MFEPA"), and the Howard County Human Rights Act, Howard County Code §§ 12.200, et seq. [6] *Id.* at ¶¶ 105-120.

---

[6] Defendant contends that judgment should be entered for the clinic because Saah failed to appeal the HC-OHR determination within the limitations period.  Mem. Supp. Mot. for Summary J., p. 33, ECF No. 18-1.  However, Saah has demonstrated that she met all administrative prerequisites to suit simply by filing the charge of discrimination.  Howard County Code Section 12.217(II) provides that "[a]ny person who is aggrieved by an act prohibited by this subtitle may bring an action in law or in equity . . . to seek damages, including counsel fees, redress of injury or injunctive relief arising out of any such prohibited act."  Additionally, MD. CODE, STATE GOV'T § 20-1202(c), which authorizes suit under the Howard County Code, requires only that a Plaintiff file her civil action between 45 days after filing her charge and two years past the date of the alleged discriminatory conduct.  Although Section 12.207B(XI) of the Howard County Code provides that a party aggrieved by a HC-OHR decision "may appeal to the Circuit Court of Howard County" within 30 days, neither the Howard County Code nor the Maryland Code requires that an appeal be taken as a prerequisite to filing a civil action for a violation of the Howard County Human Rights Act.

<u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). In so doing, this Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

<u>ANALYSIS</u>

I.   <u>Judgement Shall Be Entered for the Defendant as to All Claims Under the Americans with Disabilities Act, All Claims Under the Maryland Fair Employment Practices Act, and Plaintiff's Disability Discrimination Claim Under the Howard County Human Rights Act</u>

While Plaintiff did allege "disability discrimination" in the Complaint, she has subsequently indicated that she "does not contest Defendant's challenge [in the pending Motion for Summary Judgment] to [her] claims of disability discrimination." Pl. Opp'n, p. 50, ECF No. 21. In fact, in the Introduction section to her brief in opposition to the pending Motion, Plaintiff now states that she alleges only "pregnancy discrimination and retaliation." *Id.* at 1. Thus, it appears that Saah has abandoned all disability discrimination claims under the Americans with Disabilities Act ("ADA"), the Maryland Fair Employment Practices Act ("MFEPA"), and the Howard County Human Rights Act. Nevertheless, in the context of the Motion for Summary Judgment of the Defendant Thumel/Soverns, P.A. (ECF No. 18), the Defendant is entitled to entry of Judgment in its favor. Accordingly, this Court provides an analysis of the basis for entry of Judgment in favor of the Defendant with respect to any disability discrimination claims under the Americans with Disabilities Act, the Maryland Fair Employment Practices Act, and the Howard County Human Rights Act.

Plaintiff alleges in her Complaint that "Defendant's decision to terminate [her] because of her . . . pregnancy-related *disabilities* is a violation of Maryland State Government Code Ann. § 20-606 and 20-609, 20-1202(b) [the Maryland Fair Employment Practices Act ("MFEPA")]); Howard County Code § 12.208 [("Howard County Human Rights Act")]; and the Americans with Disabilities Act (42 U.S.C. § 12112(a)[)] [("ADA")]." Compl., ¶ 117, ECF No. 1 (emphasis added). However, Plaintiff has failed to identify what, if any, "pregnancy-related *disability*" she suffered.

To survive summary judgment on a wrongful-discharge claim under the Americans with Disabilities Act, Plaintiff is "required to produce evidence sufficient to demonstrate that (1)[s]he 'was a qualified individual with a disability;' (2) [s]he 'was discharged;' (3) [s]he 'was fulfilling h[er] employer's legitimate expectations at the time of discharge;' and (4) 'the circumstances of h[er] discharge raise a reasonable inference of unlawful discrimination.' " *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (quoting *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n. 9 (4th Cir. 2004) (internal quotation marks omitted)). "Evidence of all four of these elements is necessary to survive summary judgment." *Id.*

"Under the ADA, a 'disability' may take any of the following forms: (1) 'a physical or mental impairment that substantially limits one or more major life activities' (the 'actual-disability' prong); (2) 'a record of such an impairment' (the 'record-of' prong); or (3) 'being regarded as having such an impairment' (the 'regarded-as' prong)." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) (quoting 42 U.S.C. § 12102(1)). "In September [of] 2008, Congress broadened the definition of 'disability' by enacting the ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553 ('ADAAA' or 'amended Act')." *Id.* at

329.  "Congress instructed that the term 'substantially limits' be interpreted consistently with the liberalized purposes of the ADAAA.  *Id.* (citing 42 U.S.C. § 12102(4)(B)).  "After notice and comment, the [United States Equal Employment Opportunity Commission ("EEOC")] promulgated regulations clarifying that '[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage' and that the term is 'not meant to be a demanding standard.' "  *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(i) (2013)).

With respect to pregnancy specifically, the EEOC has indicated that a "pregnancy-related impairment that substantially limits a major life activity is a disability . . . ." and that "[a]lternatively, a pregnancy-related impairment may constitute a 'record of' a 'substantially limiting impairment,' or may be covered under the 'regarded as' prong if it is the basis for a prohibited employment action and is not 'transitory and minor.' "  *Bray v. Town of Wake Forest*, No. 5:14-CV-276-FL, 2015 WL 1534515, at *9 (E.D.N.C. Apr. 6, 2015) (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(h) (effective May 24, 2011 to present)).  However, this Court has previously noted that "[w]ith near unanimity, federal courts have held that pregnancy [alone] is not a 'disability' under the ADA."  *Genovese v. Harford Health & Fitnes Club, Inc.*, No. WMN-13-217, 2013 WL 2490270, at *5 (D. Md. June 7, 2013) (quoting *Wenzlaff v. NationsBank*, 940 F. Supp. 889, 890 (D. Md. 1996)); *see also Bray*, 2015 WL 1534515 at 9 ("conditions, such as pregnancy, that are not the result of a physiological disorder are . . . not impairments) (quoting 29 C.F.R. Pt. 1630, App., § 1630.2(h)).

In this case, there is no dispute that Saah was *pregnant* during her final months of employment with Defendant Thumel/Soverns, P.A., but Plaintiff has provided no evidence of any additional "pregnancy-related impairment."  In fact, Dr. Soverns has stated that "to

14

the best of her knowledge" Plaintiff never asked for any "additional change or accommodations" beyond those routine safety measures, discussed *supra*, that were adopted by the clinic with respect to all pregnant employees.  Soverns Dep., p. 309, ECF No. 18-15. Saah has indicated that she required help on a "case-by-case basis" during the final three months of her pregnancy with certain of her responsibilities, including "performing x-rays, bending over, lifting large objects, and handling large animals."  Saah Dep., p. 224-26; Compl., ¶ 39, ECF No. 1.   However, these limitations alone fail to establish "disability" under the ADA.  *See, e.g., Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, No. 3:12-CV-00788 VLB, 2013 WL 6230092, at *7 (D. Conn. Dec. 2, 2013), *aff'd*, 588 F. App'x 41 (2d Cir. 2014) ("Given that the plaintiff has not presented any evidence showing that her pregnancy was of such a complicated nature to permit the Court to stray from the accepted holding that pregnancies are not disabilities under the ADA and the fact that the plaintiff has not demonstrated how her impairment limited a major life activity, no reasonable trier of fact could find that the plaintiff has a disability as defined in the ADA."); *cf. Price v. UTi, U.S., Inc.*, No. 4:11-CV-1428 CAS, 2013 WL 798014, at *3 (E.D. Mo. Mar. 5, 2013) (Pregnant Plaintiff "was disabled within the meaning of the ADA" only because she had a "high-risk" pregnancy and was ordered by her doctor to stay confined to her bed as a result of a pregnancy complication).

   For these same reasons, Plaintiff has also failed to demonstrate that she suffered a "disability" with respect to her Maryland Fair Employment Practices Act and Howard County Human Rights Act claims.  Both the MFEPA and the Howard County Human Rights Act prohibit discrimination on the basis of pregnancy-related disabilities.  *See Howard*

15

County Code § 12.208(1)(a); MD. CODE, STATE GOV'T § 20-606, 20-609.  The Court of Appeals of Maryland has held that the definitions of "disability" under the ADA and Maryland law are "nearly identical." *Peninsula Reg'l Med. Ctr. v. Adkins*, 448 Md. 197, 218 (2016) (citing *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 599 (D. Md. 2013)). The same principle holds for county-level anti-discrimination laws, and the parties have cited no authority to the contrary.  *See id.* (citing *Ridgely v. Montgomery Cnty.*, 164 Md. App. 214, 232 (2005) (using decisions interpreting the ADA to interpret provisions of Montgomery County's discrimination law)).

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED with respect to Plaintiff's disability discrimination claims under the Americans with Disabilities Act, Maryland Fair Employment Practices Act, and the Howard County Human Rights Act.   Judgment shall be entered for Defendant as to those claims. Additionally, to the extent Plaintiff also raises retaliation claims under the Americans with Disabilities Act and the MFEPA, she has failed to demonstrate any entitlement to relief.

Although a plaintiff alleging retaliation under the ADA "is not required to prove the conduct [s]he opposed *was actually an ADA violation*, . . . [s]he must [still] show [s]he had a 'good faith belief' the conduct violated the ADA." *Reynolds*, 701 F.3d at 154 (quoting *Freilich v. Upper Chesapeake Health*, 313 F.3d 205, 216 (4th Cir. 2002) (internal citations omitted)) (emphasis added).   For the reasons discussed *supra*, Plaintiff has failed to present any evidence of a disability.  Accordingly, there is no evidence to support a "good faith belief" on her part that disability discrimination occurred under either the ADA or MFEPA. Therefore, Defendant's Motion for Summary Judgment (ECF No. 18) is also GRANTED

16

with respect to Plaintiff's ADA and MFEPA retaliation claims.  Because neither the ADA nor the MFEPA supports a claim of pregnancy discrimination, absent a disability[7], Judgment shall be entered for Defendants with respect to all claims brought pursuant to those statutes. This Court will next address Plaintiff's remaining claims: her pregnancy discrimination and retaliation claims under Title VII and the Howard County Human Rights Act.

II.    A Genuine Issue of Material Fact Remains as to Whether Plaintiff Suffered Pregnancy Discrimination, in Violation of Title VII of the Civil Rights Act of 1964 and the Howard County Human Rights Act

Plaintiff claims that "Defendant's decision to terminate [her] because of her *pregnancy* . . . is a violation of Title VII [of the Civil Rights Act of 1964, as amended] (42 U.S.C. § 2000e) [("Title VII")] . . . and Howard County Code § 12.208 [("Howard County Human Rights Act")]. "Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment, because of the employee's race, color, religion, sex, or national origin." *Newport News*, 462 U.S. at 669. "Title VII was amended in 1978 by the Pregnancy Discrimination Act to prohibit discrimination on the basis of pregnancy." *Id.* The Howard County Code likewise prohibits discrimination on the basis of pregnancy. *See* Howard County Code § 12.208(1)(a)-(b).

As with Plaintiff's disability discrimination claims discussed *supra*, this Court will analyze Plaintiff's pregnancy discrimination claims under both Title VII and the Howard

---

[7] Unlike the ADA and MFEPA, the Howard County Human Rights Act prohibits "pregnancy discrimination" alone, in addition to pregnancy-related disabilities  As discussed *infra*, a genuine issue of material fact remains as to whether Plaintiff suffered retaliation under the Howard County Human Rights Act, in connection with her complaint to Grap that she had been mistreated in her final weeks of pregnancy.

County Code under the same Title VII standard.  In their briefing, both parties have applied the Title VII analysis to all of Plaintiff's pregnancy discrimination claims.  Additionally, this Court has previously found Title VII case law persuasive as to state law anti-discrimination claims.  *See, e.g., Dale v. Maryland Dep't of Transp.*, No. ELH-13-191, 2015 WL 221628, at *20 (D. Md. Jan. 15, 2015), *aff'd*, No. 15-1158, 2017 WL 108007 (4th Cir. Jan. 11, 2017); *see also Ridgely*, 164 Md. App. at 232 (using decisions interpreting the Americans with Disabilities Act to interpret provisions of Montgomery County's discrimination law).

Generally speaking, a plaintiff may avert summary judgment and establish a claim of intentional discrimination using "ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue." *EEOC v. Western Elec. Co., Inc.*, 713 F.2d 1011, 1014 (4th Cir. 1983).  Alternatively, a plaintiff may proceed under the proof scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny, under which the employee, after establishing a *prima facie* case of discrimination, must demonstrate that the employer's proffered nondiscriminatory reason for the challenged employment action is in fact a pretext for discrimination.  *Id.*  Here, Plaintiff has not presented direct evidence of discrimination.  Therefore, this Court assesses her claims under the *McDonnell Douglas* burden-shifting test.

Under the *McDonnell Douglas* test, a plaintiff must first present enough evidence to make a *prima facie* case of discrimination.  *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142–43 (2000).  To establish a *prima facie* case of discrimination under Title VII, plaintiffs must show that they: (1) are members of a protected class; (2) suffered an adverse employment action; (3) were at the time performing their job duties at a level that met their

employer's legitimate expectations; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class. *See e.g., Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005).

Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce evidence that the adverse employment actions were taken against the plaintiff "for a legitimate, nondiscriminatory reason." *Id.* at 142 (citing *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Finally, the plaintiff is "afforded the 'opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Id.* (quoting *Burdine*, 450 U.S. at 253).

Defendant Thumel/Soverns, P.A. has moved for summary judgment as to Plaintiff's pregnancy discrimination claims, arguing that Plaintiff cannot establish a *prima facie* case of pregnancy discrimination. Mem. Supp. Mot. for Summary J., p. 22, ECF No. 18-1. Defendant "does not dispute that [Plaintiff] was a member of a protected class, or that an adverse employment action of termination was taken against her." *Id.* However, Defendant contends that "[t]here can be no dispute of material fact . . . as to [Plaintiff's] failure to meet her employer's legitimate expectations, and therefore she has failed to meet the third prong of the *McDonnell Douglas* test." *Id.* Defendant further contends that even if Plaintiff were able to establish a *prima facie* claim for pregnancy discrimination, she would be unable to rebut the Defendant's nondiscriminatory rationale for her termination. *Id.* at 25-26. However, for the reasons discussed herein, Plaintiff has in fact set forth a *prima facie* case of pregnancy discrimination, and a genuine issue of material fact remains as to whether Defendant's stated reason for her termination was pretextual.

A.      Plaintiff Has Set Forth a *Prima Facie* Case of Pregnancy Discrimination

As stated *supra*, Defendant does not contest that Plaintiff has established the first two

prongs of a *prima facie* case of pregnancy discrimination, but objects that Defendant has

failed to establish that she was "performing [her] job duties at a level that met [Defendant's]

legitimate expectations" and that "[her] position remained open or was filled by a similarly

qualified applicant outside the protected class." *Miles*, 429 F.3d at 485.

Plaintiff has put forward sufficient evidence to demonstrate that her position

"remained open or was filled by a similarly qualified applicant outside the protected class."

"[F]or purposes of establishing a *prima facie* case of pregnancy discrimination, the protected

class is pregnant women, not all women." *Miles v. Dell, Inc.*, 429 F.3d 480, 490 (4th Cir. 2005)

("Because Susan Patrick [replacement] was not pregnant when Dell hired her, Miles has

shown, with respect to her pregnancy discrimination claim, that she was replaced by

someone outside her protected class.").   Following Saah's termination, no one was

immediately hired to replace her, and other employees filled in to take over her hours.

Unemployment Hrg. Record, p. 34, ECF No. 22-10.   None of the other assistants were

pregnant during this time.   Thumel Dep., p. 295, ECF No. 18-14.   The only female hired as a

veterinary assistant after Saah, Summer Scout Ford, was not pregnant at the time she was

hired.   *Id.* at 296.

Plaintiff has also put forth sufficient evidence to demonstrate that she was meeting

her employer's legitimate expectations at the time of her termination.   Although the record

indicates that Saah violated several clinic policies at various times during the course of her

six-year employment at the clinic, her written performance reviews indicate that she was in

20

excellent standing with her employer in the final year of her employment. *See* 2013 Review, ECF No. 22-5 (indicating an overall score of "96/100" and a score of "10" on most evaluation criteria). The record indicates that Saah violated clinic policies at times during her employment. However, as discussed *supra*, Saah, Dr. Soverns, Dr. Thumel, and Grap disagree as to the significance of Saah's past policy violations, particularly as compared to similar violations by other employees. In contrast, the documentary evidence submitted to this Court with respect to Plaintiff's performance at the clinic indicates that Saah met, and even exceeded, her employer's legitimate expectations in 2013. *See Glunt v. GES Exposition Svcs., Inc.*, 123 F. Supp. 2d 847, 865 (D. Md. 2000) (Williams, J.) (denying summary judgment where plaintiff received excellent performance reviews prior to announcing her pregnancy sufficient to meet plaintiff's "minimal burden" on summary judgment).

B.    <u>A Genuine Issue of Material Fact Remains as to Whether Defendant's Proffered Reasons for Plaintiff's Termination Were Pretext</u>

Defendant has indicated that Saah was terminated from her position "due to a number of long-standing performance problems, none of them related to her pregnancy: 1) chronic tardiness in arriving to work, 2) eating breakfast at work while there were tasks to be accomplished, in violation of longstanding company policy, 3) idleness in the employee break area during work hours, 4) cellphone use during office hours in violation of policy, and 5) complaints from veterinarians and other co-workers regarding her lack of assistance" and that "[t]he 'last straw' was Ms. Saah's eavesdropping outside of a closed office door, and telling co-workers that a manager was 'talking shit' about employees behind closed doors." Mem. Supp. Mot. for Summary J., p. 19-20, ECF No. 18-1. However, for the reasons

discussed *infra*, Plaintiff has demonstrated that a genuine issue of material fact remains as to whether this explanation was pretextual.

   As an initial matter, Defendant's explanation is belied by Saah's 2013 performance review, on which she received a "96/100."   Defendant has provided no documentary evidence of Saah's allegedly deficient performance in that year prior to her termination.   In fact, Doctors Thumel and Soverns have admitted that Saah's performance was unchanged after her 2013 performance evaluation.   *See* Soverns Dep., p. 93, ECF No. 18-15; Thumel Dep., p. 261, ECF No. 18-14.   The United States Court of Appeals for the Fourth Circuit has recognized, although in the context of an ADA claim, that "a reasonable jury could conclude that [a plaintiff] was qualified for [her] position" where she "argues that she never received a negative performance review, evaluation, or written warning" and allegations of her poor performance were "inconsistent" and "lack[ed] [ ] documentary evidence." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 574–75 (4th Cir. 2015).

   Additionally, Plaintiff has demonstrated that Defendant's explanation for her termination has shifted over time.   The Fourth Circuit has held that an employer's provision of shifting and inconsistent justifications for taking an adverse employment action "is, in and of itself, probative of pretext." *See EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir.2001).   Saah has indicated that she was not initially provided a reason for her termination on December 10, 2013.   Saah Dep., p. 197-98, ECF No. 18-12.   At a subsequent meeting between Saah, her mother, and Soverns, Soverns cited Saah's alleged eavesdropping and "talking shit" comment, but then referenced Saah's lateness and habit of eating during work hours as additional explanations when Saah denied making the alleged comment.   At an

22

unemployment hearing in February of 2014, Thumel stated that the reason given for Saah's termination was her inappropriate comment. Thumel Dep., p. 10, ECF No. 18-14. Thumel indicated that job performance was not a reason for Saah's firing, nor was her attendance. *Id.* at 54. Plaintiff has demonstrated that it was not until Defendant responded to Saah's Howard County Office of Human Rights complaint that Defendant listed Saah's failure to perform her duties as a primary reason for her termination. CVC OHR Letter, p. 3, ECF No. 22-21. Doctors Thumel and Soverns have subsequently added more justifications in their depositions and discovery responses with respect to this litigation.

Furthermore, a factual question remains as to whether Saah actually made the "talking shit" comment. While Grap contends that Saah admitted to the comment on the telephone, and Previll and Hess recall Saah saying that Grap was "talking shit" about people, Saah denies making the comment and Floyd recalls Saah saying only that Jacklyn was in trouble and had done something wrong. *See* Floyd Dep., p. 30-32, ECF No. 18-17. Dr. Thumel has admitted that Saah's comments would have violated no company policy if she had merely stated that she "heard Jacklyn's name" and "heard them talking in there," which is essentially what Saah claims to have said in the break room. Thumel Dep., p. 93-95, ECF No. 18-14. Additionally, despite claiming to have fired Saah for her comment, Doctors Thumel and soverns have both stated that they are unaware of a clinic policy prohibiting disparaging or disruptive comments. *See* Thumel Dep., p. 99-100, ECF No.18-14; Soverns Dep., p. 274, ECF No. 18-15. The fact that Brooke Schaper Floyd, a fellow clinic employee, recalls Grap saying that she thought Saah was "taking advantage of her pregnancy" further suggests that the reasons for Saah's termination proferred by Defendant were pretext for

23

pregnancy discrimination.  Floyd Dep., p. 110-111, ECF No. 22-11.  Therefore, a genuine issue of material fact remains as to whether the clinic's justification for Saah's termination was pretext.

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED with respect to Plaintiff's pregnancy discrimination claims under Title VII and the Howard County Human Rights Act.  A genuine issue of material fact remains with respect to those claims.

III.   <u>A Genuine Issue of Material Fact Remains as to Whether Plaintiff Suffered Retaliation, in Violation of Title VII of the Civil Rights Act of 1964 and the Howard County Human Rights Act</u>

Plaintiff alleges that "Defendant's decision to terminate [her] because of her requests for accommodations and objections to discriminatory treatment constitutes retaliation in violation of Title VII, [ ][8] . . . and the Howard County Human Rights Act, Howard County Code § 12.208(f)(1)."  Compl., ¶ 119, ECF No. 1.

In order to establish a *prima facie* case of retaliation under Title VII of the Civil Rights Act of 1964, plaintiff must show (1) that she engaged in a protected activity, (2) that her employer took an adverse employment action against her[9] and (3) that a causal connection existed between the activity and the adverse action.  *See, e.g., Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 514 (D. Md. 2011) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  This same analysis applies to retaliation claims under the

---

[8] As discussed *supra*, Plaintiff has also alleged retaliation under the Americans with Disabilities Act and the MFEPA.  However, for the reasons outlined *supra*, Judgment shall be entered for Defendant as to those claims.

[9] Defendant does not contest that Saah suffered an adverse employment action.

Howard County Human Rights Act.  *See Crockett v. SRA Int'l*, 943 F. Supp. 2d 565, 576 (D.

Md. 2013) ("Plaintiff's state law retaliation claim is judged under the same standards as Title

VII.") (citing *Bishop v. Bd. of Educ. of Calvert Cnty.*, No. DKC 11–1100, 2011 WL 2651246, at

*9 (D. Md. July 5, 2011) (citations omitted)).  In their briefs, both parties have applied the

Title VII analysis to all of Plaintiff's retaliation claims.

In a Reply brief[10] in support of the pending Motion for Summary Judgment (ECF

No. 18), Defendant objects that "Plaintiff alleges no facts in her Complaint supporting a

claim for retaliation in contravention of Title VII."  Reply, p. 9, ECF No. 26.  However,

Plaintiff has specifically alleged that she "brought up how Grap had been treating her

poorly" on a December 9, 2013 phone call, to which Grap responded that "she was 'lazy.' "

Compl., ¶¶ 52-53.  Plaintiff alleges that she then told Grap that "she wasn't 'lazy,' she was

'pregnant,' " to which Grap responded that "maybe 'lazy' wasn't the right word.' "  *Id.* at ¶

54.  Plaintiff alleges that she was terminated the following day.  *Id.* at ¶ 57.

Defendant argues that this phone call "cannot be reasonably interpreted" as

protected activity.  Reply, p. 12, ECF No. 26.  However, Plaintiff has specifically indicated

that she relayed the following to Grap on that phone call: "I feel like you've been treating me

a little unfairly having to go and ask for help and you know, you sigh and roll your eyes and

---

[10] Pending before this Court is Plaintiff's Motion for Surreply (ECF No. 27), in which Plaintiff objects that Defendant did not raise its arguments in opposition to Plaintiff's retaliation claims until its Reply brief. Accordingly, Plaintiff objects that she has been "deprived . . . of the opportunity to respond to these arguments" and requests that this Court grant her leave to file a Surreply to defend her retaliation claims. Mot., p. 1, ECF No. 27. For the reasons discussed herein, this Court finds that genuine issues of material fact remain as to Plaintiff's retaliation claims under Title VII and the Howard County Human Rights Act. For these reasons, a Surreply is unnecessary. *See also* Local Rule 105.2 (D. Md. 2016) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Therefore, Plaintiff's Motion for Surreply (ECF No. 27) is DENIED.

take forever to come help me, and that's a little frustrating to me. I don't understand why . . . you've been treating me like that[,]" to which Grap responded that Saah was "Lazy." Def.'s Ex. 8-12 (Saah Depo.) at 194:9-195:20.  Saah has stated that she then told Grap "Lazy why? Because I'm pregnant and I need help with things[?]"  *Id.*  Saah states that Grap responded "Maybe lazy is not the word I should use."  *Id.*  "Employees engage in protected oppositional activity when, *inter alia*, they 'complain to their superiors about suspected violations of Title VII.'"  *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003)); *see also Crockett v. SRA Int'l*, 943 F. Supp. 2d 565, 574 (D. Md. 2013) (opposition includes "informal grievance procedures" and requires only that an employee have a "reasonable and good faith belief" that she is opposing discriminatory conduct.).  Plaintiff has stated that Grap would role her eyes and was slow to assist her.  Saah Dep., p. 172-75.  Additionally, Saah's coworker, Floyd, has stated that Grap said "Saah was "taking advantage of her pregnancy." Ex. 10 at 110:14-111:13.  Accordingly, Plaintiff has created a genuine issue of material fact as to whether she engaged in protected activity.

Defendant further objects that there is "no causal link" between Saah's phone conversation with Grap and her termination from employment by Thumel/Soverns, P.A. Reply, p. 14, ECF No. 26.  Defendant objects that "[t]he two owners that made the decision to terminate" Saah "had no knowledge of the claimed protected activity when they made their decision."  *Id.* at 16.

"To establish a causal connection between a protected activity and an adverse action, a plaintiff must prove that . . . the employer knew the employee engaged in a protected

activity." *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010) (citing *Causey v. Balog*, 162 F.3d 795, 803–04 (4th Cir. 1998) (stating that "[k]nowledge of a charge is essential to a retaliation claim"); *Dowe v. Total Action against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998) (explaining that "[s]ince, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.")).   In this case, Plaintiff has demonstrated that a genuine issue of material fact exists as to whether or not Doctors Thumel and Soverns knew of her complaint to Grap on the telephone on December 9, 2013.   A text message record submitted by Defendant indicates that Grap explicitly informed Soverns the night before Saah's termination that Saah had complained to Grap that she "just [felt] picked on" and that "she [couldn't] tell anyone anything."   Text Messages, ECF No. 18-9.   Additionally, Grap explicitly stated at her deposition that in a meeting with the Soverns prior to their decision to terminate Saah she "was telling them what happened in the conversation."   Grap Dep., p. 224, ECF No. 18-13.   Furthermore, Soverns confirmed in her deposition that Grap had "related what had gone on in the conversation" at their meeting immediately before Saah's termination.   Soverns Dep., p. 29, ECF No. 18-15.

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED with respect to Plaintiff's retaliation claims under Title VII and the Howard County Human Rights Act.   A genuine issue of material fact remains as to those claims.

27

IV.   Judgment Shall Be Entered for the Defendant as to Plaintiff's Request for Punitive
Damages

In addition to declaratory relief, reinstatement, and compensatory damages, Plaintiff

also requests punitive damages "since Defendant['s] actions were wanton, evil actions

undertaken with abiding malice." Compl., p. 13, ECF No. 1.  Prior to 1991, only equitable

relief was available to prevailing Title VII plaintiffs.  However, with the passage of the Civil

Rights Act of 1991, punitive damages are available for a Title VII action in limited

circumstances. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999). Section 1981a(b)(1)

of the 1991 Act describes the circumstances under which punitive damages are available:

> A complaining party may recover punitive damages under this section against
> a respondent (other than a government, government agency or political
> subdivision) if the complaining party demonstrates that the respondent
> engaged in a discriminatory practice or discriminatory practices *with malice or*
> *with reckless indifference to the federally protected rights of an aggrieved individual.*

42 U.S.C. § 1981a(b)(1) (emphasis added).  The Supreme Court noted that in passing Section

1981, "Congress plainly sought to impose two standards of liability—one for establishing a

right to compensatory damages and another, higher standard that a plaintiff must satisfy to

qualify for a punitive award." *Kolstad*, 527 U.S. at 534.  In considering Section 1981, the

Court has held that it is the employer's state of mind that dictates whether the imposition of

punitive damages is warranted: "The employer must act with malice or with reckless

indifference to the [plaintiff's] federally protected rights.  The terms 'malice' or 'reckless

indifference' pertain to the employer's knowledge that it may be acting in violation of federal

law, not its awareness that it is engaging in discrimination." *Id.* at 535 (emphasis in original)

(citation omitted).  Furthermore, the Court has cautioned that:

There will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard. In some instances, the employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination is lawful. The underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability.

*Id.* at 537.

Plaintiff argues that the evidence she has presented to this Court demonstrates that Defendant acted with malice or reckless indifference to her federally protected civil rights and that punitive damages are therefore warranted. Although a genuine issue of material fact remains as to Defendant's liability with respect to Plaintiff's pregnancy discrimination and retaliation claims, the evidence in the record before this Court does not satisfy the "higher standard" on which a decision awarding punitive damages must be based. *Id.* at 534.

Specifically, Plaintiff has not satisfied its burden with respect to Defendant's state of mind. The evidence in the record does not demonstrate that Defendant Thumel/Soverns, P.A. acted with malice, an evil motive, or recklessness or callous indifference to Plaintiff's rights. On the contrary, Thumel/Soverns, P.A. had an anti-discrimination policy in its employee manual for years. *See* Soverns Dep., p. 293, ECF No. 18-15. Additionally, Dr. Soverns has indicated that Thumel/Soverns, P.A. has a long-standing policy and practice concerning pregnant employees. *Id.* at 308. Pursuant to that policy, pregnant employees are directed not to perform chemotherapy, take x-rays, empty litter boxes, or lift heavy objects, and are encouraged to ask for help whenever it is needed. *Id.* Saah has indicated that she received those same accommodations up until the time of her termination. Saah Dep., p.

29

232-33, ECF No. 18-12.   Although Saah has indicated that Grap reacted negatively to her pregnancy and requests for help on several occasions, Saah does not claim that any clinic employee ever failed to provide her with assistance when asked. *Id.* at 169, 177.   For these reasons, Defendant's Motion for Summary Judgment (ECF No. 18) shall be GRANTED with respect to Plaintiff's request for punitive damages.   Accordingly, Judgment shall be entered for Defendant with respect to Plaintiff's request for punitive damages, and punitive damages shall not be awarded in this case.

CONCLUSION

For the reasons stated above, Defendant Thumel/Soverns, P.A.'s Motion for Summary Judgment (ECF No. 18) is GRANTED IN PART and DENIED IN PART. Specifically, Saah has failed to present any evidence that she suffered a "disability." Accordingly, Defendant's Motion is GRANTED with respect to all claims, both discrimination and retaliation, under the Americans with Disabilities Act and the Maryland Fair Employment Practices Act, which prohibit discrimination on the basis of disability, but not pregnancy alone.   Additionally, Defendant's Motion is GRANTED with respect to Plaintiff's disability discrimination claim under the Howard County Human Rights Act, which prohibits both disability discrimination and pregnancy discrimination.   JUDGMENT shall be ENTERED for Defendant Thumel/Soverns, P.A. as to those claims.   However, Defendant's Motion is DENIED as to Plaintiff's pregnancy discrimination and retaliation claims, brought under Title VII of the Civil Rights Act of 1964 and the Howard County Human Rights Act.   Genuine issues of material fact remain as to liability on those claims.

30

Finally, Defendant's Motion is GRANTED with respect to Plaintiff's request for punitive damages.   JUDGMENT shall be ENTERED for Defendant as to Plaintiff's request for punitive damages, and punitive damages will not be awarded in this case.

A separate Order follows.

Dated: February 7, 2017 \_\_\_\_\_/s/_____
Richard D. Bennett
United States District Judge

31